

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-96,741-01

### EX PARTE JOSE AMBROSIO TAPIA, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS CAUSE NO. 1053651-A IN THE 339TH DISTRICT COURT HARRIS COUNTY

**PARKER, J., filed a dissenting opinion in which YEARY and FINLEY, JJ., joined.**

DISSENTING OPINION

Applicant claims that counsel was three months late in notifying him of the court of appeals's decision and that this late notice deprived him of the ability to file a petition for discretionary review (PDR). But Applicant waited more than 17 years to seek habeas relief in the form of an out-of-time PDR. I would hold that Applicant has not met the requirement of showing that, had he been timely notified

of the court of appeals's decision, he would have timely filed a PDR. Alternatively, I would hold that relief is barred by laches.

## I. BACKGROUND

Applicant was convicted of aggravated assault on a peace officer and of two counts of aggravated robbery, and he was sentenced to three concurrent life sentences. He appealed, arguing only that his sentences were cruel and unusual.[1] The court of appeals issued an opinion affirming on July 6, 2007.[2] The court of appeals rejected Applicant's claim as unpreserved because it was not raised at trial or in a motion for new trial.[3] The court of appeals also pointed out that the sentences were within the statutory range of punishment and ran concurrently.[4]

The court of appeals's docket sheet shows no action until it received a letter on November 15, 2007. We have no information on who sent the letter or its contents. Our own docket sheet has a PDR number—PD-1803-07—and lists a request for extension of time to file a PDR "filed" on December 12, 2007, and

---

[1] *Tapia v. State*, Nos. 01-06-00915-CR, 01-06-00916-CR, 01-06-00917-CR, 2007 WL 1953771 (Tex. App.—Houston [1st Dist] July 6, 2007) (not designated for publication).

[2] *Id.*

[3] *Id.*

[4] *Id.*

"denied" that same day. Our docket sheet also notes, "No PDR filed." Due to the passage of time, and this Court not being fully digital when the extension request was filed, this Court has no documents associated with the extension request. We don't have the motion or any attachments that might have been filed, and we don't know if it was the letter that was filed in the court of appeals. On January 15, 2008, the court of appeals issued its mandate.

More than 17 years later, on April 8, 2025, Applicant filed a habeas application requesting an out-of-time PDR. He claims that counsel was late in notifying him of the court of appeals's opinion and attaches a letter that purports to be dated October 17, 2007. The letter, including the signature, is in black-and-white ink, and no envelope is attached to show a postmark for the letter.

In an affidavit, Applicant's appellate attorney said that he no longer had a case file on Applicant but also said, "I mail my clients a copy of the court's decision within a couple of days of receiving the appellate court's decision." Counsel acknowledged that he would not have sent the letter by certified mail, return receipt requested. Counsel's affidavit responded to specific questions asked of him, and he was not asked if the letter purporting to be dated October 17 was genuine in all respects or if he could say whether it was. Counsel was also not

asked when he received the court of appeals's decision. Counsel did not volunteer information that would answer these unasked questions.

In its findings, the habeas court found the attorney's affidavit credible. The court further found that the attorney no longer has a copy of the file, had a practice of mailing his clients a copy of the appellate decision within a couple of days of receiving it, and sent a letter to Applicant but not via certified mail, return receipt requested. The habeas court also found that Applicant attached a letter from the attorney dated October 17, 2007, that advised Applicant of the court of appeals's decision and of his right to file a PDR. The court further found that the attorney's letter was untimely and that, as a result, Applicant "was unable to exercise his right to file a *pro se* PDR." The habeas court did not address whether Applicant would have timely filed a PDR if he had been timely notified of the court of appeals's decision, and the habeas court made no recommendation on whether to grant relief.

## II. ANALYSIS

### A. Merits

To prevail on an ineffective-assistance out-of-time-PDR claim, the applicant must show, among other things, that "absent counsel's conduct, the appellant

would have timely filed a PDR."[5]  Applicant alleges in his writ application that he "would have availed himself of the PDR process to present 'nonfrivolous' claims including ineffective assistance of appellate counsel in filing claim on direct appeal that he either knew or should have known was never preserved for appellate review."  But he has not filed an affidavit swearing to the truth of his allegations.  A habeas application, even though "sworn," is a mere pleading, not evidence, and cannot provide an evidentiary basis for granting relief.[6]  Applicant has therefore failed to provide any evidence to satisfy the requirement of showing that he would have timely filed a PDR.

Moreover, Applicant waited over 17 years to raise his current complaint that he was deprived of the ability to file a PDR.  A habeas applicant's "delay in seeking relief can prejudice the credibility of his claim,"[7] and this maxim seems especially true when the issue is whether the defendant wanted to pursue an appellate

---

[5] *Ex parte Crow*, 180 S.W.3d 135, 138 (Tex. Crim. App. 2005).

[6] *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) ("[I]n all habeas cases, sworn pleadings are an inadequate basis upon which to grant relief, and matters alleged in the application that are not admitted by the State are considered denied."); *Ex parte Garcia*, 353 S.W.3d 785, 789 (Tex. Crim. App. 2011) ("Sworn pleadings provide an inadequate basis upon which to grant relief in habeas actions."); *Ex parte Ambrose*, 145 Tex. Crim. 582, 583, 170 S.W.2d 731, 732 (1943) ("The application for the writ, although sworn to, is but a pleading and does not prove itself.").

[7] *Ex parte Galvan*, 770 S.W.2d 822, 824 (Tex. Crim. App. 1989).

remedy.[8]

And though Applicant apparently made a request to extend the time to file a PDR, our records show that request was filed nearly two months after the October 17 letter purportedly notifying Applicant of the court of appeals's decision. Applicant appears to have taken more than the 45 days that he would have been afforded if the date of the letter had been the day the court of appeals's decision had issued.[9] If the letter the court of appeals received was in fact Applicant's motion, with it later being forwarded to us, then Applicant would have made his request within 30 days after receiving notice. He would still have taken more than the 15 days required to file an extension request,[10] and we don't know that the letter was his extension request. And we don't know that Applicant ever actually proffered a PDR for possible filing. And the fact is, whatever diligence Applicant used to request an extension to file a PDR, his extreme delay in seeking habeas relief suggests he was not interested enough to file a PDR on time.

Further, Applicant had no chance of getting a PDR granted. Applicant

---

[8] *See id.* (holding that defendant had failed to manifest to his attorney a desire to appeal).

[9] TEX. R. APP. P. 68.2(a) (30 days to file petition), (c) (15 days to file a motion for extension of time).

[10] *See id.* 68.2(c).

himself makes the point that the cruel-and-unusual-punishment claim made on appeal was frivolous. And even setting the preservation problem aside, he would have had no chance of prevailing on the merits of such a claim. Applicant claims he would have raised a different claim, but the cruel-and-unusual punishment claim was the only claim raised on appeal. He says he would have raised an ineffective assistance claim for failing to raise a different claim on appeal, but such a claim would also be frivolous because it would not respond the court of appeals's decision. As this Court has said on numerous occasions, this Court ordinarily "reviews only 'decisions' of the courts of appeals."[11] And while there are exceptions to that principle, none would apply to any PDR Applicant could file.[12]

Of course, an applicant is not required to show, in a deprivation-of-PDR claim, that he would have succeeded in getting his PDR granted.[13] But the total absence of any chance of success could bear on our assessment of whether

---

[11] *Osorio-Lopez v. State*, 663 S.W.3d 750, 757 (Tex. Crim. App. 2022). *See also Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014).

[12] The oft-cited exception is if the resolution of an issue that was decided by the court of appeals creates a "remaining issue" and the proper resolution of that remaining issue is clear. *Osorio-Lopez*, *supra*. Another possible exception would be a systemic issue such as a lack of jurisdiction.

[13] *Crow*, 180 S.W.3d at 138 ("When a defendant's right to an entire judicial proceeding has been denied, the defendant is 'required to show a reasonable probability that, absent counsel's errors, a particular proceeding would have occurred, but he [is] not required to show that the proceeding would have resulted in a favorable outcome.'").

Applicant would have timely filed a PDR. This "no-chance-of-success" factor would not persuade me if Applicant had filed his habeas application relatively soon, such as within a year after the court-of-appeals mandate had issued. But considering the extreme length of delay in seeking habeas relief, the fact that he had no chance of success is an additional consideration weighing in favor of a conclusion that he would not have timely filed a PDR.

And I would further point out that the habeas court has never made a finding that Applicant would have timely filed a PDR—no finding has been made on the issue at all. We could perhaps remand to the habeas court to make a finding on the issue, but the record before us wouldn't support a finding on that issue in Applicant's favor anyway.

## B. Laches

Alternatively, I would hold that Applicant's claim is barred by laches. Laches is an equitable doctrine that, based on the passage of time and the existence of prejudice, can require the denial of habeas relief.[14] This Court has adopted a "sliding scale" for assessing whether prejudice has been shown: the longer the delay, the less evidence is required, especially when the delay greatly exceeds five

---

[14] *Ex parte Hill*, 711 S.W.3d 221, 222, 225 (Tex. Crim. App. 2025).

years.[15] Prejudice can come in a variety of forms, one of which is the hindering of the State's ability to respond to the habeas applicant's allegations.[16]

The sliding-scale standard weighs heavily in favor of denying relief in this case. A 17-year delay is a long time for any sort of habeas claim, but it is an especially long time for the type of claim before us—a claim of entitlement to an out-of-time PDR, due to being untimely notified of the court-of-appeals opinion. Such an uncomplicated claim should have been easy to compose, and one would expect a person truly interested in pursuing a PDR to seek habeas relief soon after the appeal became final.[17]

And the State has been prejudiced in its ability to respond to Applicant's claim. We no longer have documentation on Applicant's belated attempt to obtain an extension of time to file a PDR. We don't know what exactly he asked for, why he thought he was entitled to it, what supporting documentation he might have submitted, or if he ever even submitted a PDR for late filing. And Applicant's

---

[15] *Id.* at 225.

[16] *Ex parte Perez*, 398 S.W.3d 206, 212-13, 215 (Tex. Crim. App. 2013).

[17] In fact, this failure to diligently seek an out-of-time PDR strongly suggests, at the very least, that Applicant lost interest in pursuing a PDR, and it arguably establishes that he effectively abandoned his right to do so. Due to my conclusion about laches, I need not address whether his conduct amounted to an abandonment of the right to file a PDR that would foreclose the right without any inquiry into prejudice.

appellate attorney no longer has any files on the case.

And the attorney said in his affidavit that he sends a defendant the court-of-appeals decision within days after receiving it, and the habeas court found counsel to be *credible*. So, what happened? Did the attorney adhere to his usual practice, but the decision was sent late because the court of appeals was late in sending its decision out? Or did the attorney deviate from his usual practice, though his affidavit doesn't say he ever did that? Or did the attorney send a letter, but it got lost in the mail, and so he sent another one? Or is the date on the letter a forgery, achieved through artful use of a photocopier (the letter is entirely in black-and-white)? Or did the attorney notify Applicant orally in a timely fashion and sent the written letter as a follow up? If Applicant had filed his writ a year after the court-of-appeals mandate had issued, perhaps counsel could have shown from his files that he did timely notify Applicant in some fashion of the court-of-appeals decision. But those files are now gone, and so are any files possessed by this Court regarding Applicant's extension request.

Appellate Procedure Rule 48.4 *now* requires an appellate attorney to send the defendant notification of the court-of-appeals decision by certified mail, return receipt requested, and to send a letter to the court of appeals certifying compliance

and attaching a copy of the return receipt.[18]  But that rule became effective on September 1, 2007, and was not in effect during the time in which Appellant would have needed to be notified of his right to appeal—though it was effective before the purported date of counsel's letter (October 17, 2007).  But if counsel *did* give Applicant timely notice of the court of appeals's decision, Rule 48.4 would not have been effective yet, and he would not have had to comply with it.

The upshot of all this is that the State has at least been *hampered* in its ability to respond to Applicant's allegations.  Even this Court being *pretty sure* that counsel did not timely notify Applicant of the court-of-appeals decision doesn't negate prejudice, because there remains the possibility that counsel did timely notify Applicant.  And documentation on Applicant's extension request could conceivably have shown lack of diligence on Applicant's part in seeking discretionary review.  Given the extreme length of the delay in bringing his claim, even a small likelihood of either relief-negating facts should be enough to bar relief under the doctrine of laches.[19]

---

[18]  TEX. R. APP. P. 48.4.

[19]  The Presiding Judge contends that we can consider the issue of laches when Applicant files a PDR, but in all likelihood, this Court would hold that it would be too late to raise laches at that point because, "The appropriate time to apply laches because of Applicant's delay in challenging his . . . conviction was before we reached the merits of his claims."  *Ex parte Hill*,  632 S.W.3d 547, 553 (Tex. Crim. App. 2021).  Although *Hill* did not involve an out-of-time-PDR

I respectfully dissent.

Filed: January 29, 2026

Publish

---

claim, the principle articulated in that case applies here. In the present case, the "claim" at issue is an out-of-time-PDR claim, and if we *grant* that claim, then we have reached its *merits*. Under *Hill*, it would be too late on discretionary review (the later proceeding) to address the issue of laches from a delay in seeking an out of time PDR after we have *already granted* the out of time PDR. Moreover, while the Presiding Judge seems to suggest that we might apply laches to claims raised in an ensuing PDR, those claims wouldn't be "late" with respect to the PDR. Also, delaying a laches determination for a later proceeding seems especially inappropriate when the prejudice at issue is not the State's inability to retry the case but the State's *inability to respond to the habeas claim*. There is absolutely no reason to think that the State's ability to respond to the habeas claim could somehow be easier when Applicant later files an out-of-time-PDR.